UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>BRIAN A. TANGUY<br><br>Debtor | Chapter 7<br>Docket No.: 25-10096 JEB |
| BRIAN STROUT,<br>KERRI STROUT<br><br>Plaintiffs<br>v.<br><br>BRIAN A. TANGUY<br><br>Defendants | Adversary Proceeding<br>No.: |

**COMPLAINT SEEKING DETERMINATION THAT DEBT SHOULD BE EXCEPTED FROM DISCHARGE PURSUANT TO 11 U.S.C. § 523**

NOW COME the Plaintiffs, Brian and Kerri Strout, by and through counsel, and seek a determination that Defendant's indebtedness to Plaintiffs is nondischargeable pursuant to the provisions of 11 U.S.C. § 523(a)2(A) and 11 U.S.C. § 523(a)(6).

PARTIES

1. The Plaintiff Brian Strout is a natural person residing at 112 Robertson Street, Quincy, Massachusetts 02169.

2. The Plaintiff Kerri Strout is a natural person residing at 112 Robertson Street, Quincy, Massachusetts 02169.

3. The Defendant, Brian A. Tanguy, is a natural person residing at 12 Summer Street, Weymouth, Massachusetts 02188, hereinafter "Defendant" or "Debtor".

1

## JURISDICTION AND VENUE

4. On January 21, 2025 ("the Petition Date") the Defendant filed a voluntary Chapter 7 petition for relief under Chapter 7 of the bankruptcy Code ("the Chapter 7 Case") in this Court.

5. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

6. This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

7. This District is the proper venue for this proceeding pursuant to 28 U.S.C. § 1409.

## FACTS

### A. Defendant's Home Improvement Business

8. Prior to the Petition Date the Defendant owned and operated a home improvement contractor business known as All-Pro Builders, Inc. ("All-Pro").

9. The Defendant was the sole officer and director of All-Pro and throughout the course of All-Pro's operations the Debtor solely controlled and directed its operations.

10. Plaintiffs state upon information and belief that throughout the course of All-Pro's operations it was thinly capitalized, failed to observe legal formalities, failed to maintain adequate financial records and failed to maintain any separation between the affairs of the company and the affairs of the Debtor.

11. Plaintiffs state upon information and belief that throughout the course of All-Pro's operations, Debtor and the LLC commingled the assets of All-Pro with Debtor's assets and used the assets of All-Pro to pay for the Debtor's personal expenses.

### B. Debtor Defrauds Plaintiffs

12. Plaintiffs are the owners of the property at 112 Robertson Street, Quincy, Massachusetts

2

("the Property").

13. On or about February 25, 2022, the Defendant entered into a home improvement contract ("Contract") with the Plaintiffs to renovate their home.

14. At the time of the execution of the Contract, Debtor represented to Plaintiffs that he was going to perform all work under the Contract in a timely, professional and workmanlike manner and that he would employ only the best, most highly qualified subcontractors.

15. The Contract price was $239,500.

16. The Defendant represented to the Plaintiffs that the project would take 4 to 5 months to complete.

17. The Defendant's representations about the speed and quality of work were important to Plaintiffs given their primary objective of constructing suitable living space for their elderly parent/in-law.

18. The Contract was in violation of M.G.L. c 142A, the Massachusetts Home Improvement Contractor Statute, as it did not contain language required by the statute and was otherwise not compliant.

19. In reliance on the Defendant's representations the Plaintiffs paid an initial deposit of $24,500 on February 25, 2022.

20. At Defendant's request the Plaintiff's deposit was bifurcated into 2 checks that were made payable to the Defendant individually and to his company All-Pro.

21. The Defendant demanded an additional deposit of $24,000 on March 31, 2022, despite the fact that no work had been performed.

22. The Defendant provided minimal work between March 31, 2022 and May 6, 2022.

23. On or about May 6, 2022 the Defendant represented to the Plaintiffs that he needed an

3

additional deposit, again bifurcated into 2 checks.

24. Before paying the Defendant an additional amount the Plaintiffs again asked for assurance that the 4-5 month timeframe was attainable.

25. The deadline to complete the project was important to Plaintiffs because of plans made to relocate their mother/mother-in-law to live with them in the newly renovated home.

26. The purpose of some of the renovations was to modify the Property to accommodate an elderly parent.

27. The Defendant represented that the deadline would be met and the Plaintiffs paid him another $24,000.

28. The Defendant represented that the payments were needed by him to pay subcontractors and acquire materials.

29. The Defendant solicited additional payments form the Plaintiff making similar representations that the money was needed to finance materials and labor.

30. By December 1, 2022, the Plaintiffs had paid the Defendant $188,400.

31. The Plaintiffs paid the Defendant directly $29,000.

32. The Plaintiffs paid All-Pro $159,400.

33. During their dealings with the Defendant the Plaintiffs made additional payments totaling $43,684.61 directly to subcontractors and suppliers.

34. The Defendant represented that the payments to the suppliers and subcontractors would be credited to the Plaintiffs against the total Contract price.

35. Contrary to his representations to Plaintiffs the payments they made were not being used for the purposes represented by the Defendant.

36. The work progressed slowly because the Defendant was not paying his subcontractors or

4

buying materials needed for the project.

37. In February 2023, the Defendant asked the Plaintiffs to make a $10,000 payment directly to the HVAC subcontractor even though they paid Defendant for this purpose.

38. The Defendant said the project would come to a standstill if the payment was not made.

39. In April of 2023 the Plaintiffs began receiving lien notices from subcontractors who were not paid by the Defendant.

40. The Plaintiffs confronted the Defendant and learned that he had lied to them about the purpose of their periodic payments.

41. Specifically, the Defendant could not have been using the periodic payments to finance labor costs because the subcontractors claimed they had not been paid.

42. Additionally, the Plaintiff's periodic payments could not have been used to finance material purchases because materials were needed to complete the project.

43. By the end of April 2023 the Plaintiffs had paid substantially all of the Contract price and the work was nowhere near completion.

44. The Plaintiffs were forced to hire replacement contractors at an additional cost of $43,000.

45. The money that Plaintiffs paid to the Defendant in reliance on Defendant's representations was taken by him and used for reasons unrelated to their Contract.

46. The Defendant did not complete the project.

47. The Plaintiff's mother was never able to move into their home before she passed away.

### COUNT ONE – 11 U.S.C. § 523 (a)2

48. The Plaintiffs repeat and reallege each and every allegation contained in paragraphs (1) through (47) above as if set forth herein separately.

49. The debt owed by the Defendant to the Plaintiffs arises out of a claim for money obtained by false pretenses, a false representation, or actual fraud.

50. On and after February 25, 2022 the Debtor knowingly and deliberately made false representations to the Plaintiffs designed to induce them into making payments to him.

51. The statements included, but were not limited to, assurances that he would only use Plaintiff's money to buy materials and pay for labor related to the Contract.

52. The Plaintiffs reasonably relied on the truth of the false statements made by the Debtor.

53. In reliance on the truth of the representations made by the Debtor, the Plaintiff paid and continued making payments to Defendant totaling $188,400.00.

54. The Debtor fraudulently converted the Plaintiffs' funds to his own use and enjoyment.

55. The Plaintiffs suffered harm as a result of the Debtor's actions.

**WHEREFORE**, the Plaintiffs respectfully requests that this Honorable Court enter judgment in their favor by determining that the debt owed to them by the Debtor is nondischargeable, as well as order any further or alternative relief that it deems just and reasonable.

### COUNT TWO - 11 U.S.C. § 523 (a)4

56. The Plaintiffs repeat and reallege each and every allegation contained in paragraphs (1) through (55) above as if set forth herein separately.

57. The debt owed by the Debtor to the Plaintiffs arises out of a claim for larceny.

58. The Defendant, with the intent to defraud, took money that belonged to the Plaintiffs.

59. At the time the possession of Plaintiff's money occurred the Defendant intended to steal or convert the money to his own use and enjoyment.

60. The Defendant converted the money to his own use and enjoyment and permanently deprived the Plaintiff of said funds.

61. The Plaintiff suffered harm of more than $188,400.00.

**WHEREFORE**, the Plaintiffs respectfully request that this Honorable Court enter judgment in their favor by determining that the debt owed to them by the Debtor is nondischargeable, as well as order any further or alternative relief that it deems just and reasonable.

                              Respectfully submitted,
                              Plaintiff, through counsel,

Date: 3/21/2025                         /s/ Christopher J. Fein
                                         Christopher J. Fein, BBO: 654403
                                         Fein Law Office, P.C.
                                         50 Braintree Hill Office Park - Suite 302
                                         Braintree, Massachusetts 02184
                                         (781) 356-5555
                                         cjfein@feinlawoffice.com